Filed 6/20/16  In re J.B. CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D069456 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3681) |
| v. | |
| T.B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Daniela Davidian, Deputy County Counsel, for Plaintiff and Respondent.

Valerie N. Lankford, under appointment by the Court of Appeal, for Minor.

## INTRODUCTION

Mother appeals from a juvenile court judgment terminating her parental rights and choosing adoption as the appropriate permanent plan for her child.[1] (Welf. & Inst. Code, § 366.26.)[2] She contends the court erred by finding the beneficial parent-child relationship exception to adoption (*id.*, subd. (c)(1)(B)(1)) inapplicable to preclude termination of her parent rights. We disagree and affirm the judgment.

## BACKGROUND

The San Diego County Health and Human Services Agency (Agency) took the child into protective custody after mother was arrested for being under the influence of drugs while walking with the child on an off-ramp of a busy intersection with no pedestrian walkway. At the time, mother was smoking marijuana on a daily basis and had cannabis oil in her possession accessible to the child.

The Agency filed a dependency petition on the child's behalf, which resulted in the initiation of a voluntary case with the child placed in mother's care. The voluntary case was not successful as mother minimally participated in her voluntary services and continued to use drugs. In addition, the Agency received reports mother was neglecting the child, mother and her boyfriend were using drugs while caring for the child, and mother's boyfriend overdosed in the family home while the child was present.

---

[1]    We refer to the parties by the generic terms "mother" and "child" to maintain confidentiality.

[2]    Further statutory references are to the Welfare and Institutions Code.

2

The Agency subsequently filed another dependency petition alleging mother was no longer willing and able to provide adequate care and supervision for the child, rendering the voluntary case ineffective in ameliorating the situation requiring Agency involvement. The juvenile court sustained the petition, ordered the child placed in mother's care, and ordered family maintenance services for mother.

Mother did not comply with the family maintenance services and the Agency could not locate her for several weeks. When the Agency eventually located her, she appeared to be under the influence of drugs and admitted she had used marijuana. She also admitted she was homeless and unable to care for the child. The Agency again took the child into protective custody, but this time detained the child in a licensed foster home.

The Agency filed a supplemental petition on the child's behalf. The juvenile court sustained the petition, ordered the child placed in a licensed foster home, and ordered reunification services for mother. Although mother received more than a year of reunification services, she failed to comply with her case plan and was unable to maintain her sobriety. As a result, the court terminated her reunification services and scheduled a hearing to select and implement a permanent plan for the child (section 366.26 hearing). The same day the court terminated mother's reunification services, the Agency placed the child with caregivers who had known the child for over a year through the child's foster parents and desired to adopt the child.

At the time of the section 366.26 hearing, the child was five years old. The child lived a little over three years with mother and a little less than two years in foster care.

While the child was in foster care, mother had weekly supervised visits with the child. Before the court terminated reunification services, mother's weekly visits were for two hours. Unfortunately, mother's visits were not consistent and at least twice there were large time gaps between visits. Nonetheless, when the visits occurred, mother was attentive to and interacted positively and affectionately with the child.

After the court terminated reunification services, mother's weekly visits were reduced to one hour. Her visits became fairly consistent and both mother and the child enjoyed them. The child referred to mother as "mommy." Mother engaged and played with the child. She also attempted to redirect and correct the child's behavior when necessary. The pair loved one another and expressed their mutual affection.

Although the child missed mother and emotionally reacted when the visits ended, the child was typically not distressed and transitioned easily back to the caregivers. The child usually did not talk about mother between visits. When the child did talk about mother, the child referred to mother by both mother's given name and by "mom." The child had a good relationship with the caregivers and went to them for comfort and assistance as easily as the child went to mother. The child referred to the primary caregiver as "mommy," and the child's behavior, comments, and emotional reactions toward the primary caregiver were not substantially different than those toward mother.

At the section 366.26 hearing, the Agency's adoption expert testified the child was generally and specifically adoptable. Among the possibilities, the child's caregivers, who had known the child for over a year and had been caring for the child for about five and a half months, desired to adopt the child.

4

The Agency's adoption expert opined adoption better served the child's best interests than guardianship and the child's relationship with mother did not outweigh the benefits of adoption. The expert explained, "[The child] has developed an attachment with the current caregivers who provide daily care and support. [The child has] become a member of a stable and loving family, and guardianship would essentially put [the child] in the middle of an ongoing battle for [the child's] emotions while [the child] enjoys [the child's] visits with … mother."

Mother testified she believed adoption would be detrimental to the child because mother was the child's primary caregiver for most of the child's life and is the only person who has consistently been there for the child since the child's birth. She believed she has a strong bond with the child. Consequently, the child would miss her and would eventually come looking for her.

The parties stipulated the child, if called as a witness, would testify: The child liked visiting mother. The child would be sad to not see mother again. The child would be sad to not see the primary caregiver again. The child gave a thumbs up signal to the idea of staying with the primary caregiver until the child was all grown up. The child gave a thumbs down signal to the idea of not seeing mother again.

At the conclusion of the section 366.26 hearing, the court found by clear and convincing evidence the child was adoptable and none of the statutory exceptions to adoption applied. Consequently, the court terminated mother's parental rights and selected adoption as the child's permanent plan.

DISCUSSION

Mother contends the juvenile court erred by finding the beneficial parent-child relationship exception did not apply. She asserts she maintained regular visitation and shared a substantial and positive emotional attachment with child. She also asserts she occupies a parental role in child's life and the benefits of maintaining the parent-child relationship outweigh the benefits the child would receive from a permanent home with new, adoptive parents.

I

"After reunification services have terminated, the focus of a dependency proceeding shifts from family preservation to promoting the best interest of the child including the child's interest in a 'placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. [Citation.]' [Citation.] The purpose of a section 366.26 hearing is to 'provide stable permanent homes for' dependent children. [Citation.] At a section 366.26 hearing the juvenile court has three options: (1) to terminate parental rights and order adoption as a long-term plan; (2) to appoint a legal guardian for the dependent child; or (3) to order the child be placed in long-term foster care." (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534.)

"Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*).) If the court finds a child cannot be returned to his or her parent and is likely to be adopted if parental rights are terminated, the court must select adoption as the permanent plan unless the court finds termination of parental rights would be detrimental to the child under any of the specified

6

statutory exceptions. (§ 366.26, subd. (c)(1)(A), (B)(i)-(vi); *In re Erik P.* (2002) 104 Cal.App.4th 395, 401.) The parent has the burden of establishing one of the specified statutory exceptions applies. (*In re T.S.* (2009) 175 Cal.App.4th 1031, 1039.) Because a section 366.26 hearing occurs "after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 (*Jasmine D.*).)

The beneficial parent-child relationship exception, upon which mother relies, applies if termination of parental rights would be detrimental to the child because mother has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) Courts have interpreted the phrase " 'benefit from continuing the … relationship' " "to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575; accord, *In re Jason J.* (2009) 175 Cal.App.4th 922, 936.)

A parent asserting this exception cannot meet her burden by showing frequent, friendly and loving contact with the child or even the existence of a parent-child bond. (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1200; *In re J.C.* (2014) 226 Cal.App.4th 503, 529; *In re C.F.* (2011) 193 Cal.App.4th 549, 555; *In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.)  Rather, the parent must show the parent serves a parental role for the child of such quality that severing the parent-child relationship would harm the child to the point of outweighing the benefits of adoption.  (*In re L.S.*, at p. 1199; *In re C.F.*, at p. 555; *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324.)

"We apply the substantial evidence standard of review to the factual issue of the existence of a beneficial parental relationship, and the abuse of discretion standard to the determination of whether there is a compelling reason for finding that termination would be detrimental to the child." (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395.)

II

In this case, the parties do not dispute mother was the child's primary caregiver for the first few years of the child's life and had consistent one-hour weekly visits with the child during the six months preceding the section 366.26 hearing.  The parties also do not dispute mother's visits with the child were pleasant and loving, mother was attentive to the child and the child's needs, the child knew mother as "mommy," the child was excited when each visit began, and sad when each visit ended.  While these facts establish mother and child loved one another and had an emotional attachment, these facts do not establish the parent-child relationship was of such a quality that maintaining it outweighs the benefits of adoption to the child.

8

Other evidence showed mother's role in the child's life was only nominally parental. When mother was the child's primary caregiver, the child's life was unstable. The child was exposed to drug use and domestic violence, and mother eventually admitted she was unable to care for the child. From that point forward, mother remained unable to care for the child and never progressed to having unsupervised visits with the child.

Although mother played with and attended to the child during their brief, weekly supervised visits, the child easily transitioned back to the caregivers when the visits ended and the child usually did not talk about the mother between visits. Mother occupied a pleasant place in the child's life, but she did not occupy a role where she principally, or was among those who principally, fulfilled the child's emotional and physical needs.

" 'While friendships are important, a child needs at least one parent. Where a biological parent ... is incapable of functioning in that role, the child should be given every opportunity to bond with an individual who will assume the role of a parent.' [Citation.] Thus, a child should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree but does not meet the child's need for a parent. It would make no sense to forgo adoption in order to preserve parental rights in the absence of a real parental relationship." (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.)

Accordingly, we conclude mother has not established there was insufficient evidence to support the court's finding she did not have a beneficial parental relationship

9

with the child. Concomitantly, she has not established the court abused its discretion in determining there was no compelling reason to find termination of her parental rights would be detrimental to the child.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

AARON, J.

PRAGER, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.