Filed 9/29/22  In re O.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re O.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. N.M., Defendant and Appellant. | E078677 (Super.Ct.No. J289216) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Conditionally reversed with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Dawn M. Martin, Deputy County Counsel for Plaintiff and Respondent.

1

The juvenile court terminated the parental rights of defendant and appellant N.M. (Mother) to her son, O.M. (Minor). (Welf. & Inst. Code, § 366.26.)[1] Mother contends plaintiff and respondent San Bernardino County Children and Family Services (the Department) failed in its duty to further inquire whether Minor is an Indian child by not contacting the Bureau of Indian Affairs (the BIA) and the "Blackfoot" tribe.[2] (§ 224.2, subds. (e)(2)(B)&(C).) We conditionally reverse with directions.

## FACTUAL AND PROCEDURAL HISTORY

Minor was born in May 2021. Minor tested positive for methamphetamines and benzodiazepines, and he was placed in the neonatal intensive care unit. Five days after Minor's birth, Mother was arrested pursuant to a warrant for the offenses of attempted carjacking (Pen. Code, §§ 664, 215, subd. (a)) and assault likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)). The identity of Minor's father was unknown. The Department detained Minor on or around May 17, 2021.

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2] We place "Blackfoot" in quotation marks because "there is frequently confusion between the Blackfeet tribe, which is federally recognized, and the related Blackfoot tribe which is found in Canada and thus not entitled to notice of dependency proceedings." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

Mother initially told a social worker that Mother has Native American ancestry through the "Blackfoot" tribe and two other tribes, but Mother "was mumbling and stated that she did not know how to pronounce the names when further asked on 05/17/2021. [Mother] did not report that she is registered nor an active member of a Tribe."

On May 20, 2021, Mother completed a Parental Notification of Indian Status form (ICWA[3]-020). Mother marked the box indicating that she "may have Indian ancestry." Mother identified the tribe as Naiwpei.[4] Mother also completed a Department ICWA form, indicating that she had Naiwpei ancestry and the tribe was located in Massachusetts. Mother provided the name and telephone number of her grandmother, in order for the Department to gather more ancestry information.

At the detention hearing on May 20, 2021, the following exchange took place:

"The Court: Okay. Are you a member of any tribe?

"The Mother: Not that I know of."

"The Court Officer: Your Honor, before we go, she started the ICWA form and listed a tribe on here.

"The Court: Okay. [Mother] you wrote a tribe on here. What is this?

---

[3] Indian Child Welfare Act (25 U.S.C. § 1901 et seq.).

[4] The parties agree that there is not a federally recognized tribe known as Naiwpei.

3

"The Mother: That's my grandmother, but I'm trying to get all the—I was adopted, so I'm trying to see if it's my—this is my real, like, blood-grandmother.

"The Court: Okay.

"The Mother: So I put that because that's her. But I'm not sure if it, you know, pertains to me.

"The Court: I see. But you indicated you're not a member of a tribe.

"The Mother: Not yet that I know of, no.

"The Court: Okay. Thank you."

A Department social worker spoke with Mother's sister, T.M. (Aunt-1). Aunt-1 said Mother "has Indian heritage via her biological maternal grandmother, but denied knowing through which tribe." Aunt-1 provided the name of Mother's biological grandmother. The Department social worker spoke with Mother's sister, S.M. (Aunt-2), who confirmed that Mother "has Indian heritage via her biological maternal grandmother."

The Department social worker spoke with Mother, who said "she was adopted when she was 18 months old." Mother's adoptive parents are deceased, but they "previously told her that she had Indian ancestry via her biological maternal grandmother, whom reportedly resides in Missouri."

The Department social worker spoke with Mother's biological mother, C.H. (Grandmother), who said that her mother (Great-Grandmother) told her "they have Indian ancestry, but she does not know what tribe." The social worker asked for Great-Grandmother's contact information, but Grandmother said she would speak with Great-

4

Grandmother.  Grandmother reported back to the social worker that Great-Grandmother "did not remember anything about any possible Native American or Indian heritage."

At the hearing concerning termination of parental rights, the Department's attorney said, "I would note that the mother previously indicated that she has [']Blackfoot['] heritage through the mother, the biological mother.  So the mother—so [the Department] did follow up with the biological maternal grandmother who indicated that she did not know which tribe the family had Native American ancestry through, but would reach out to her mother, the biological maternal great-grandmother, who indicated that she did not know—could not recall which tribe it was.  [¶]  So at this point I do believe that the Court can find that the Indian Child Welfare Act does not apply given that the mother doesn't have any affiliation such as a card or actually belonging to a reservation or receiving any services from the [']Blackfoot['] tribe."  The juvenile court found that ICWA did not apply.

## DISCUSSION

Mother contends the Department had reason to believe Minor had "Blackfoot" ancestry and therefore the Department erred by not seeking further information from the BIA and the "Blackfoot" tribe.  (§ 224.2, subds. (e)(2)(B)&(C).)

When the Department takes custody of a child, the Department "has a duty to inquire whether that child is an Indian child," by asking "family members[ and] others who have an interest in the child" whether the child is an Indian child.  (Welf. & Inst. Code, § 224.2, subd. (b); see also Cal. Rules of Court, rule 5.481(a)(1).)  If a person "informs the court that the child is an Indian child" then "[t]here is reason to know that

5

the child is an Indian child." (Welf. & Inst. Code, § 224.2, subd. (d); see also Cal. Rules of Court, rule 5.481(b)(1)(A).)

If there is insufficient "information to determine that there is reason to know that the child is an Indian child," but the court or the Department "has reason to believe that an Indian child is involved in a proceeding" then the court or social worker "shall make further inquiry regarding the possible Indian status of the child." (Welf. & Inst. Code, § 224.2, subd. (e); see also Cal. Rules of Court, rule 5.481(a)(4).)

"There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes," "information that indicates, but does not establish," that the child is an Indian child, such as relatives' claims of Indian ancestry. (§ 224.2, subds. (d)(1)&(e)(1).)

The further inquiry required when there is a reason to believe a child is an Indian child includes "[c]ontacting the [BIA] for assistance in identifying the names and contact information of the tribes in which the child may be a member" and "[c]ontacting the tribe or tribes . . . expected to have information regarding the child's membership, citizenship status or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978." (Welf. & Inst. Code, § 224.2, subds.(e)(2)(B)&(C); see also Cal. Rules of Court, rule 5.481(a)(4)(B)&(C).) The Department "does not discharge [its] duty of further inquiry

until [it] make[s] a 'meaningful effort' to locate and interview extended family members and to contact [the] BIA and the tribes." (*In re K.T.* (2022) 76 Cal.App.5th 732, 744.)

Mother claimed Minor had Indian ancestry, in particular, "Blackfoot" ancestry. Aunt-1 and Aunt-2 supported that claim by asserting Mother has Indian ancestry through her biological family. Grandmother, who was Mother's biological relative, further supported Mother's claim by contending Mother has Indian ancestry. Given that multiple relatives contended that Minor has Indian ancestry via Mother's biological family, there was reason to believe that Minor is an Indian child. (§ 224.2, subds. (d)(1)&(e)(1).)

As a result, the Department was required to contact the BIA and the "Blackfoot" tribe for further information about Minor's possible Indian ancestry. (§ 224.2, subds. (e)(2)(B)&(C).) There is no evidence that the Department contacted the BIA or the "Blackfoot" tribe. Accordingly, the Department failed to conduct an adequate further inquiry.

The Department asserts "there was no reason to believe [Minor] was an Indian child" because Minor's relatives did not provide information about the "Blackfoot" tribe and Great-Grandmother could not recall anything regarding Indian ancestry. Aunt-1, Aunt-2, and Grandmother all claimed that Minor has Indian ancestry. Mother recalled that she has Native American ancestry with three tribes, one of which was the "Blackfoot" tribe. The Department fails to explain why Mother's recollection of having "Blackfoot" ancestry was not credible or why it required confirmation from a relative.

7

Section 224.2 provides that if "a member of the child's extended family informs the court that the child is an Indian child," then there is reason to believe the child is an Indian child, and thus there is a duty of further inquiry. (§ 224.2, subds. (d)(1), (e)(1)&(2).) In other words, the claim of Indian ancestry by one relative can trigger the duty of further inquiry. In this case, Mother claimed "Blackfoot" ancestry and three more relatives asserted Minor has Indian ancestry. Therefore, there was reason to believe Minor is an Indian child, and specifically may have "Blackfoot" ancestry.

Next, the Department asserts it "has no duty to give ICWA notice unless there is 'reason to know' that the child is an Indian child under certain circumstances which are not relevant in this case." Mother is not asserting that formal notice of the proceedings should have been given to the BIA and the "Blackfoot" tribe. (§ 224.3.) Rather, Mother is asserting that the Department should have inquired of the BIA and the "Blackfoot" tribe regarding Minor. (§ 224.2, subds. (e)(2)(B)&(C); see also *In re S.R.* (2021) 64 Cal.App.5th 303, 315 ["information that is far less conclusive than what would trigger formal notice may trigger the obligation to conduct further inquiry"].) Accordingly, the Department's assertion concerning notice is not responsive to the issue presented.

The Department contends that the error is harmless. An error in failing to further inquire is prejudicial "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

The Department spoke to Grandmother who, in turn, spoke to Great-Grandmother and reported back to the Department. Presumably, if the Department had asked Grandmother for Great-Grandmother's name, birthdate, place of birth, current place of residence, and her parents' names, the Department could have obtained that information given that Grandmother was in communication with Great-Grandmother. Thus, identifying information about Great-Grandmother was readily obtainable. Further, that identifying information would have assisted the "Blackfoot" tribe in its research into whether Minor is an Indian child because the alleged Indian ancestry was through Great-Grandmother. In sum, "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Therefore, the error is prejudicial.

**DISPOSITION**

The order terminating parental rights is conditionally reversed. The juvenile court is directed to order the Department to comply with the further inquiry requirements (§ 224.2, subd. (e)(2)(B)&(C); Cal. Rules of Court, rule 5.481(a)(4)). If, upon finding that an adequate inquiry has been conducted, the juvenile court determines that ICWA does not apply, then the order terminating parental rights shall be reinstated.

9

If, upon finding that an adequate inquiry has been conducted, the juvenile court determines that ICWA does apply, then the order terminating parental rights will remain reversed, and the juvenile court shall conduct all proceedings in accordance with ICWA and related California laws.  (*In re K.T.*, *supra*, 76 Cal.App.5th at p. 745.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

10