Filed 6/21/23  In re A.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.B. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080333 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ2200251) |
| v. | OPINION |
| C.Z., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant C.Z. (Mother) and R.N.[1] (Father; collectively, Parents) are the parents of D.N. (male, born May 2022; hereafter minor). Mother appeals from the juvenile court's finding that the Indian[2] Child Welfare Act of 1978 (ICWA) did not apply to minor. For the reasons set forth *post*, we affirm the juvenile court's orders and findings.

## FACTUAL AND PROCEDURAL HISTORY[3]

On May 22, 2022, the Riverside County Department of Public Social Services (the Department) received an immediate response referral with allegations of general neglect. Mother gave birth to minor in May 2022, at 29 weeks and five days gestation; he weighed one pound and 10.6 ounces. Minor was in the Neonatal Intensive Care Unit (NICU) and was to remain in the hospital for six to eight weeks.

A social worker went to the hospital and learned that Mother had tested positive for amphetamine and methamphetamine at delivery. When the social worker spoke with Mother at the hospital, she told the social worker that "she has no Native American ancestry."

On May 25, 2022, a court issued a protective custody warrant to remove minor.

---

[1]  Father is not a party to this appeal.

[2]  "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]  We will concentrate on the facts and procedural history that pertain to ICWA.

On May 26, 2022, the Department filed a petition on behalf of minor and A.B.[4] pursuant to Welfare and Institutions Code[5] section 300, subdivisions (b)(1) and (g). According to the ICWA-010(A) attached to the section 300 petition, the social worker noted that she asked Parents about minor's Indian status and they gave her "no reason to believe the child is or may be an Indian child."

At the detention hearing on May 27, 2022, the juvenile court quashed the previously issued protective custody warrant. Moreover, the court found that Father was an alleged father pending a DNA test. The court also found that a sufficient inquiry was made regarding whether minor may have Indian ancestry. The court found that ICWA did not apply to the proceedings. The court then ordered Parents to disclose "the names, residency, and any known identifying information of any maternal or paternal relatives to [minor]." The court detained minor and found that he came within section 300, subdivisions (b) and (g).

On May 27, 2022, on the ICWA-020 forms, both Mother and Father declared they did not have Native American ancestry.

In the jurisdiction and disposition report filed on June 22, 2022, the social worker noted that ICWA "may apply" because on June 20, 2022, Father reported that "he may

---

[4] A.B. is not part of this appeal.

[5] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

have Native American ancestry, specifically, ["Blackfoot"][6]Indian, through his paternal grandmother who is now deceased. However, he is unaware if any family members were registered with the tribe." The report also noted that minor remained in the NICU and his discharge date was unknown.

In an addendum report filed on July 26, 2022, the social worker stated that minor was placed with the maternal grandmother on August 1, 2022. The social worker's attempts to contact Father were unsuccessful; his phone no longer worked. Moreover, Father missed his paternity test.

At the contested jurisdiction hearing on October 17, 2022, the juvenile court found that ICWA did not apply and minor was not an Indian child. The juvenile court struck the g-1 allegation; found true the section 300, subdivision (b), allegations; adjudged minor as dependent of the court, removed minor from Parents' care, and provided Mother with reunification services. The court also found Father to be an alleged father, and that he was not entitled to reunification services.

On December 8, 2022, Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends that "the juvenile court erred in finding that the ICWA did not apply, requiring a conditional affirmance of the jurisdictional/dispositional judgment and remand for proper inquiry and/or noticing under the ICWA."

---

[6] We place "Blackfoot" in quotation marks because "there is frequently confusion between the Blackfeet tribe, which is federally recognized, and the related Blackfoot tribe which is found in Canada and thus not entitled to notice of dependency proceedings." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

A.     LEGAL BACKGROUND

Under ICWA, the juvenile court and CFS have an " 'an affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678, quoting § 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*Ibid.*)

Initially, the county welfare department must ask the "child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)  At the parties' first appearance before the juvenile court, the court must ask "each participant present in the hearing whether the participant knows or has *reason to know* that the child is an Indian child" (§ 224.2, subd. (c), italics added), and "[o]rder the parent . . . to complete *Parental Notification of Indian Status* ([Cal. Judicial Council] form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Thereafter, when there exists a *reason to believe* that an Indian child is involved, the social worker must "make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence.  [Citations.]  But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

5

B.      <u>INITIAL INQUIRY UNDER ICWA</u>

Under section 224.2, subdivision (b), the county welfare department must ask the "child, parents, legal guardian, Indian custodian, extended family members, . . . , whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).)

Here, as provided *ante*, minor was not "placed into the temporary custody of a county welfare department pursuant to section 306." (§ 224.2, subd. (b).) Instead, minor was taken into protective custody via a "Protective Custody Warrant Removal" (all caps and boldface omitted) under section 340.

In *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), this court held that "[s]ubdivision (b) of section 224.2 requires a county welfare department to ask extended family members about a child's Indian status only if the department has taken the child into temporary custody under section 306." Moreover, on May 17, 2023, this court again held that "CFS must ask extended family members and others . . . only if that child has been placed into CFS's temporary custody pursuant to section 306." (*In re Ja.O.* (2023) 91 Cal.App.5th 672, 667-668.) This court went on to state that "[t]he expanded duty of initial inquiry under subdivision (b) of section 224.2 . . . does not apply" when a child is taken into protective custody pursuant to a warrant under section 340, subdivision (b). (*Id.* at p. 679.)

In this case, because minor was detained after the Department obtained a detention warrant, not under the authority of section 306, the expanded duty of initial inquiry under section 224.2, subdivision (b), does not apply. (*In re Ja.O.*, *supra*, 91 Cal.App.5th at p. 679.)

In Mother's reply brief, Mother concedes that "[u]nder *In re Robert F.*, the Department was not obligated to make inquiry of extended relatives regarding the family's American Indian heritage given that [the child] was taken into protective custody via a warrant."

## C.  FURTHER INQUIRY UNDER ICWA

On appeal, Mother contends that the Department failed to conduct a further inquiry into Father's claim that he may have Native American heritage under section 224.2, subdivision (e).  In the jurisdiction and disposition report, the social worker noted that ICWA may apply, and Father "reported he may have Native American ancestry, specifically, ["]Blackfoot["] Indian, through his paternal grandmother who is now deceased."

Section 224.2, subdivision (e)(1), states that there is a "reason to believe" an Indian child is involved  in a proceeding when "the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."

However, in this case, a further inquiry was not required because Father was an alleged father; he had not signed the birth certificate and his counsel requested that the court find Father to be an "alleged" father of minor.  To date, Father had failed to submit a paternity test to determine if he is minor's father.

As an alleged father, Father does not qualaty as a "parent" for purposes of ICWA. ICWA defines a parent as " 'any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child . . . .  It does not include the

7

unwed father where paternity has not been acknowledged or established.' " (*In re C.A.* (2018) 24 Cal.App.5th 511, 520.)

Moreover, "[a]n alleged father may or may not have any biological connection to the child.  Until biological paternity is established, an alleged father's claims of Indian heritage do not trigger any ICWA notice requirement because, absent a biological connection, the child cannot claim Indian heritage through the alleged father. . . .  [U]ntil biological paternity is established for an alleged father who claims Indian heritage, neither the court nor the social worker knows or has reason to know that an Indian child is involved and notice requirements are not activated."  (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533.)

In this case, Mother agrees with the Department that Father is an alleged father, not a presumed or biological father.  Therefore, the notice provisions under ICWA does not apply to him at this time.  Hence, no further inquiry under ICWA was required.

## DISPOSITION

The juvenile court's findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

McKINSTER _____

Acting P. J.

FIELDS _____

J.

8