Filed 5/11/22  In re Emiliano R. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re EMILIANO R. et al., Persons Coming Under the Juvenile Court Law. | B314406 |
| | (Los Angeles County Super. Ct. No. DK22413) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. GUADALUPE M., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Juvenile Court Referee. Conditionally affirmed with directions.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Guadalupe M. appeals from the juvenile court's orders appointing legal guardians for one of her sons, Emiliano R., and terminating Guadalupe's parental rights to two of her other sons, Cristobal R. and Luis M.  Guadalupe argues the Los Angeles County Department of Children and Family Services did not comply with the requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because the Department did not ask known relatives about possible Indian ancestry.  Therefore, she argues, the juvenile court erred in ruling that ICWA did not apply.

We conclude that, because the Department breached its duty of inquiry under ICWA and Welfare and Institutions Code section 224.2, subdivision (b),[1] substantial evidence did not support the court's finding ICWA did not apply.  Therefore, we conditionally affirm the juvenile court's orders and direct the court to ensure the Department complies with section 224.2 and, if necessary, the notice provisions under ICWA and related California law.

---

[1]	Undesignated statutory references are to the Welfare and Institutions Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Dependency Proceedings*

Guadalupe is the mother of 11-year-old Emiliano, eight-year-old Luis, and six-year-old Cristobal.[2]  In April 2017 the Department filed a petition under section 300 alleging that Guadalupe hit Emiliano's hands with a belt and that Guadalupe was under the influence of alcohol while the children were in her care.  The Department also alleged Guadalupe and Luis R., the presumed father of Emiliano and Luis, had a history of physical altercations, including several occasions where Luis R. pushed Guadalupe in the presence of one of the children.

The juvenile court removed the children from Guadalupe, sustained an amended petition, and declared Emiliano, Luis, and Cristobal dependent children of the court.  The Department later filed a subsequent petition under section 342 alleging the children also came under the jurisdiction of the juvenile court because Guadalupe was using amphetamine and methamphetamine, which put the children at serious risk of physical harm.  The juvenile court sustained an amended version of the section 342 petition.

At the six-month review hearing the court found Guadalupe had made substantial progress toward alleviating or mitigating the causes necessitating the court's jurisdiction.  The court also ordered the Department to return the children to Guadalupe and to provide Guadalupe with family maintenance services.  Six months later, however, the Department filed a petition under section 387 asking the court to remove the

---

[2]     Guadalupe has three other children; they are not relevant to this appeal.

children from Guadalupe because she recently "had a diluted toxicology screen"; had an elevated blood alcohol content while the children were in her care; and, in violation of the court's orders, had allowed Luis R. to care for the children. The court again removed the children from Guadalupe and subsequently sustained the section 387 petition.

The court continued the hearing to select a permanent plan for Emiliano, Luis, and Cristobal several times. During this time Emiliano lived with two caregivers, Mr. and Mrs. A., while Luis and Cristobal lived together with different caregivers. At the hearing the court found Emiliano was not likely to be adopted and selected legal guardianship as the permanent plan for him. The court appointed Mr. and Mrs. A. as Emiliano's guardians and terminated jurisdiction. The court found Luis and Cristobal were likely to be adopted, designated their caregivers as the prospective adoptive parents, and terminated Guadalupe's parental rights to the two boys.[3]

B.    *Inquiry Under ICWA and Related California Law*

A social worker for the Department interviewed both Guadalupe and Luis R. after the initial referral. Both stated they had no known Indian ancestry. At the detention hearing Guadalupe and Luis R. each completed a Judicial Council form ICWA-020, Parental Notification of Indian Status. Each checked the box next to the statement, "I have no Indian ancestry as far as I know." The court asked Guadalupe and Luis R. at the hearing whether they had any known Indian ancestry, and both responded they did not. The court found: "[T]his case is not an Indian Child Welfare Act [case], as the children are not Indian

---

[3]    The court also terminated Luis R.'s parental rights to Luis and Cristobal. Luis R. is not a party to this appeal.

4

children, and therefore this court has no reason to know or determine that notices should be sent out." There is no indication in the record the court ever inquired again about possible Indian ancestry.

A social worker for the Department went to Guadalupe's home and spoke with a man whom one of Guadalupe's children identified as the child's "uncle." Several months later a social worker spoke with a man named Enrique M., whom the social worker referred to as the children's "maternal uncle."[4] There is no indication in the record the Department ever asked Enrique about the children's possible Indian ancestry.

When a social worker subsequently asked Guadalupe whether she had any relatives who could monitor her visits with the children, Guadalupe suggested her father (i.e., the maternal grandfather) and said her mother (the maternal grandmother) could not be a monitor because she did not have a car. The Department filed a Relative Information Sheet that listed each of the maternal grandparents and provided telephone numbers for both. There is no indication in the record the Department attempted to contact either grandparent about possible Indian ancestry or anything else.

Although the record does not reveal Mr. A.'s biological relationship (if any) to Emiliano, both Mr. A. and a social worker for the Department signed State of California—Health and Human Services Agency form SOC 309, Agency-Relative Guardianship Disclosure. The form stated that it is intended for "relative caregivers" and that it "must be completed prior to a relative becoming a legal guardian." There is no indication in the

---

[4] Enrique and Guadalupe share the same last name. It is not clear whether Enrique was the same uncle the social worker spoke with previously.

record the Department ever asked Mr. A. about the children's possible Indian ancestry.

## DISCUSSION

Guadalupe appeals from the juvenile court's order appointing legal guardians for Emiliano and the order terminating her parental rights to Luis and Cristobal. Guadalupe contends that the Department did not conduct an adequate inquiry into the children's possible Indian ancestry and that the juvenile court failed to ensure the Department fulfilled its duties of inquiry under ICWA and related California law. We agree with both contentions.

A.    *Applicable Law*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7; see *In re J.C.* (2022) 77 Cal.App.5th 70, 76; *In re T.G.* (2020) 58 Cal.App.5th 275, 287.) ICWA provides: "'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' [Citation.] This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an

6

Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.*, at p. 5; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re J.C.*, at p. 76; *In re H.V.* (2022) 75 Cal.App.5th 433, 436.)[5] "'ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.'" (*In re J.C.*, at p. 77; see 25 U.S.C. § 1902; *In re T.G.*, at p. 287.)

"'"'Federal regulations implementing ICWA . . . require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." [Citation.] The court must also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."'"'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 77; see 25 C.F.R. § 23.107(a) (2021).) California law "'more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child."'" (*In re J.C.*, at p. 77; see § 224.2, subd. (a); *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742.)

"Section 224.2 "'creates three distinct duties regarding ICWA in dependency proceedings.'"'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 77; see *In re H.V.*, *supra*, 75 Cal.App.5th at

---

[5] "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subds. (a), (b).)

p. 437; *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.) "First, section 224.2, subdivision (b), requires the child protective agency to ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (*In re J.C.*, at p. 77; see *In re H.V.*, at p. 437; Cal. Rules of Court, rule 5.481(a)(1).) "Second, if the court or child protective agency 'has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child,' the court and the Department 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'" (*In re J.C.*, at p. 78; see § 224.2, subd. (e); *In re H.V.*, at p. 437; Cal. Rules of Court, rule 5.481(a)(4).) "Third, if the further inquiry '"results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."'" (*In re J.C.*, at p. 78; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re H.V.*, at p. 437.)

"'"'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.'" [Citation.] "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78; see § 224.2, subd. (i)(2); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1050; Cal. Rules of Court, rule 5.481(b)(3).) But "the court may not find

8

that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408; see *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

> B. *The Department Failed To Conduct an Adequate Inquiry into the Children's Possible Indian Ancestry, and the Court Failed To Ensure the Department Complied with ICWA and California Law*

Guadalupe argues the Department failed to conduct an adequate inquiry into whether Emiliano, Luis, and Cristobal may be Indian children. The Department essentially concedes the point, and for good reason. The Department did not ask known extended family members whether the children had possible Indian ancestry. Most significantly, the Department made no effort to contact or interview Guadalupe's parents (the children's maternal grandparents), despite having their contact information. (See 25 U.S.C. § 1903(2) ["'extended family member'" includes the child's "grandparent"]; § 224.1, subd. (c) ["'extended family member'" is "defined as provided in Section 1903 of the federal Indian Child Welfare Act"]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 553, fn. 10 [grandparent is an extended family member under ICWA].) The agency's failure to do so was a clear violation of section 224.2, subdivision (b). (See *In re J.C., supra,* 77 Cal.App.5th at p. 79 [child protective agency's failure to ask the child's paternal grandmother about possible Indian ancestry violated section 224.3, subdivision (b)]; *In re Y.W.,* at pp. 552-553 [child protective agency's failure to follow a lead to locate and interview the mother's biological parents violated section 224.2, subdivision (b)].)

9

The Department also violated section 224.2, subdivision (b), by failing to ask Enrique M., a maternal uncle whom a social worker interviewed, about the children's possible Indian ancestry. (See 25 U.S.C. § 1903(2) ["'extended family member'" includes the child's adult "aunt or uncle"]; *In re Darian R.* (2022) 75 Cal.App.5th 502, 508 [child protective agency violated section 224.2 by failing to interview a maternal aunt about possible Indian ancestry]; *In re N.G.* (2018) 27 Cal.App.5th 474, 482 [child protective agency breached its duty of inquiry by failing to ask a maternal uncle about possible Indian ancestry].) Finally, the Department did not ask Mr. or Mrs. A., who identified themselves as Emiliano's relatives, about possible Indian ancestry; at the very least the Department should have asked how they were related to Guadalupe and her children. (See *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 [section 224.2, subdivision (b), requires the child protective agency to interview extended family members]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 [section 224.2 "obligates the court and child protective agencies to ask all relevant involved individuals . . . 'whether the child is, or may be, an Indian child'"]; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 [failing to ask the father's known relatives about possible Indian ancestry violated ICWA requirements under state law].) Rather than conduct a meaningful inquiry, the Department appears to have unquestionably accepted Guadalupe's initial statement she had no known Indian ancestry. The law requires the Department to do more than that. (See § 224.2, subd. (a) [the court and the child protective agency "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child"]; *In re J.C.*, *supra*,

77 Cal.App.5th at p. 77 ["Although commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings."].)

Guadalupe also argues, and we agree, the juvenile court breached its duty to ensure the Department adequately investigated whether Emiliano, Luis, and Cristobal may be Indian children. (See § 224.2, subd. (a).) There is no indication in the record that, after the detention hearing, the juvenile court made any inquiry into whether the Department complied with its duties of inquiry under ICWA and California law. (See *In re J.C.*, *supra*, 77 Cal.App.5th at p. 79 [juvenile court "did not satisfy its duty to ensure the Department adequately investigated whether [the child] may be an Indian child" where there was "no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought"].) And the court easily could have done more. For example, the Department filed the Relative Information Sheet identifying the contact information for Guadalupe's parents, as well as several status reports indicating social workers had spoken with Enrique M. The court could have asked the Department whether the social workers had asked Guadalupe's known relatives about possible Indian ancestry. (See *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 555 ["juvenile court failed to ensure the [child protective agency] adequately investigated the children's possible Indian ancestry" where the court did not follow up on the agency's efforts to locate the mother's biological parents]; *In re N.G.*, *supra*, 27 Cal.App.5th at p. 482 [juvenile court had a duty to ensure the child protective agency made the relevant inquiries, including asking the

11

maternal uncle whether the child "may have maternal Indian ancestry"].)

C. *The Department's and the Juvenile Court's Violations of ICWA and California Law Were Not Harmless*

The Department's primary argument is that Guadalupe has not shown the Department's failure "to inquire of [Guadalupe's] family members regarding Indian ancestry was prejudicial." According to the Department, because Guadalupe "denied" Indian ancestry,[6] "inquiry of the maternal relatives . . . was not 'likely to bear meaningfully upon whether the child is an Indian child.'"

We have repeatedly rejected nearly identical arguments by the Department. (See, e.g., *In re J.C., supra.*, 77 Cal.App.5th at p. 80; *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 433; *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 556.) As we have explained, where the Department fails to discharge its duty of inquiry under ICWA and related California law, "the error is in most circumstances . . . prejudicial and reversible." (*In re Antonio R.*, at p. 435; see *In re N.G.*, *supra*, 27 Cal.App.5th at p. 484 ["In the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, . . . as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible."].) "Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error

--------

[6] Which isn't really accurate. Guadalupe stated she had no known Indian ancestry; she did not deny she had Indian ancestry.

12

where there is an inadequate initial inquiry." (*In re Antonio R.*, at p. 435; see *In re Christopher L.* (2022) \_\_\_ Cal.5th \_\_\_, \_\_\_ [2022 WL 1210274, p. 9] ["appellate courts should be wary of finding harmless error '[w]hen a counterfactual inquiry appears too difficult to responsibly undertake, or a counterfactual conclusion relies on inferences that really amount to guesswork,'" quoting *In re J.P.* (2017) 15 Cal.App.5th 789, 804 (conc. opn. of Baker, J.)].) Where, as here, the child protective agency's "failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice, we must remand for a proper inquiry." (*In re J.C.*, at p. 80.)

As it has previously, the Department relies on the court's statement in *In re Benjamin M.*, *supra*, 70 Cal.App.5th 735 that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) The Department, however, misapplies the holding in *Benjamin M.* to the facts here. As the court in *Benjamin M.* explained, the question is whether the readily obtainable information is likely to bear meaningfully on the inquiry whether a child is an Indian child, not whether the information is likely to show the child is an Indian child. (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; see *In re J.C.*, *supra.*, 77 Cal.App.5th at p. 80.) The court in *Benjamin M.* acknowledged "[t]here are cases where . . . it was obvious that additional information would not have been meaningful to the inquiry. This might occur where the evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*In re Benjamin M.*, at p. 743.)

13

The Department's inquiry here was not "'sufficient for a reliable determination.'" The only evidence the Department obtained were statements by Guadalupe and Luis R. at detention that they had no known Indian ancestry. A parent's denial of known Indian ancestry, absent confirmation from other extended family members or additional efforts by the Department to inquire about possible Indian ancestry, is not sufficient for the court to make a reliable determination. (See *In re J.C., supra*, 77 Cal.App.5th at p. 81 ["the extensive inquiry requirements under section 224.2 presume that a parent's declaration on the ICWA-020 form . . . is not enough and that the child protective agency must do more than look at the form"]; *In re Y.W., supra*, 70 Cal.App.5th at p. 554 ["parents may not know their possible relationship with or connection to an Indian tribe"]; *In re S.R., supra*, 64 Cal.App.5th at p. 314 ["tribal affiliations and . . . connections are easily lost," and parents may have "no idea of their family's connection to" a tribe, even when there is one]; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 ["'parents may be unsure or unknowledgeable of their own status as a member of a tribe"], disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6.) Had the Department asked Guadalupe's parents and Enrique about possible Indian ancestry, they may have stated something different than Guadalupe. Or they may have confirmed the children indeed had no known ancestry. Either way, an interview with those family members would have borne meaningfully on the inquiry. (See *In re Antonio R., supra*, 76 Cal.App.5th at p. 435 ["In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the

14

child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child."].)[7]

The Department invites us to reconsider our opinion in *Antonio R.* (and by implication *J.C.*).[8] The Department argues we should instead follow *In re A.C.* (2021) 65 Cal.App.5th 1060, where the court stated: "'Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage [*sic*] on appeal, a miscarriage of justice has not been established and reversal is not required.'" (*Id.* at p. 1069.)

We respectfully decline the Department's invitation. As we explained in *In re J.C.*, requiring a parent to come forward with information a child protective agency is under a statutory duty to obtain would "allow[ ] the harmless error exception to swallow the rules governing the duty to inquire." (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 81.) "By failing to conduct an adequate inquiry, the Department virtually guarantees that the (incomplete) information it obtains will support a finding ICWA does not apply and that the juvenile court's error in failing to

---

[7] *In re Benjamin M.* actually supports the conclusion the Department's failure to inquire here was not harmless. The court in *In re Benjamin M.* held the child protective agency's failure to interview the father's relatives was *not* harmless because "the information those relatives could have given would likely have shed meaningful light on whether there is reason to believe [the child] is an Indian child." (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Similarly, any information from Guadalupe's parents and Enrique would have shed meaningful light on the children's possible Indian ancestry.

[8] The Department filed its Respondent's Brief before we issued our opinion in *In re J.C., supra,* 77 Cal.App.5th 70.

15

require the Department to comply with the law is harmless." (*Id.* at p. 80.)  "'It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim.'" (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 433; see *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 556.)[9]

## DISPOSITION

The juvenile court's orders are conditionally affirmed.  The juvenile court is directed to ensure the Department fully complies with the inquiry and, if necessary, notice provisions of ICWA and related California law, including interviewing Guadalupe's parents and Enrique M. to inquire about possible Indian ancestry, and any other extended family members the Department and court identify.

SEGAL, J.

We concur:

PERLUSS, P. J.          FEUER, J.

[9]     The Department's reliance on *In re A.C.*, *supra*, 65 Cal.App.5th 1060, *In re S.S.* (2022) 75 Cal.App.5th 575, and *In re Darian R.*, *supra*, 75 Cal.App.5th 502, in support of its harmless error argument, is misplaced.  (See *In re J.C.*, *supra*, 77 Cal.App.5th at p. 83; *In re Antonio R.*, *supra*, 76 Cal.App.5th at pp. 433-434.)