Filed 7/14/22  J.W. v. Superior Court CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| J.W. et al.,<br><br>　　　　Petitioners,<br><br>　　　　　　v.<br><br>LOS ANGELES COUNTY SUPERIOR COURT,<br><br>　　　　Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　Real Party in Interest. | B316616<br>(Los Angeles County Super. Ct. No. 20CCJP04741A) |

ORIGINAL PROCEEDING; petition for extraordinary writ. Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge. Petition conditionally granted.

Nicole J. Johnson, Nairi Dulgarian, Law Office of Jolene Metzger, for Petitioner J.W.

Steven Shenfeld, David Paul, Law Office of Martin Lee, for Petitioner L.M.

No appearance for Respondent.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Real Party in Interest.

_____

## I. INTRODUCTION

This is the second time we have been asked to consider the adequacy of the efforts of the Los Angeles County Department of Children and Family Services (Department) to investigate father's claims of Native American ancestry. On a previous appeal from the juvenile court's jurisdictional findings and disposition orders, we concluded that the Department's inquiry efforts were inadequate and remanded the matter to the juvenile court to ensure additional investigation of father's Indian ancestry claims pursuant to the Indian Child Welfare Act (ICWA).

Father and mother of now two-year-old J.W. contend the Department's investigation and notice efforts after remand remain inadequate and, therefore, the juvenile court's findings that the Department has completed its ICWA investigation and

2

there is no reason to know J.W. is an Indian child are not supported by substantial evidence. We agree.

## II. BACKGROUND

A. *August 6, 2020 to November 16, 2020*

On September 9, 2020, the Department filed a petition on behalf of then-one-month-old J.W. pursuant to Welfare and Institutions Code section 300.[1]

The petition was preceded by an investigation by the Department, during which father "confirmed" to the Department on August 6, 2020, that he has Native American ancestry and is "linked" with the Blackfoot[2] and Cherokee tribes. He planned to register with the tribes. Father subsequently filed a Parental Notification of Indian Status stating he may have Indian ancestry with the Cherokee tribe.

On September 29, 2020, paternal aunt L.W. told the dependency investigator that her family may have Cherokee and

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     "[T]here is frequently confusion between the Blackfeet tribe, which is federally recognized, and the related Blackfoot tribe, which is found in Canada and thus not entitled to notice of dependency proceedings. When Blackfoot heritage is claimed, part of the [Department]'s duty of inquiry is to clarify whether the parent is actually claiming Blackfoot or Blackfeet heritage so that it can discharge its additional duty to notice the relevant tribes." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

Blackfeet heritage, but she did not have any "information." She stated that paternal uncle M.U. had "all of the information" and gave the dependency investigator his telephone number. Paternal aunt L.W. provided paternal grandmother's name, date and place of birth, and date and place of death, and paternal grandfather's name and place and date of birth. She stated that paternal grandfather suffered from dementia. She did not know paternal great-grandmother's date of birth or death or, apparently, her name. She provided paternal great-grandfather's name, but did not know his date of birth or death.

On September 29, October 1, and October 5, 2020, the dependency investigator tried, unsuccessfully, to contact paternal uncle M.U. by telephone. She left a message each time, but he did not return her calls.

The dependency investigator stated that father had not been interviewed as he had not made himself available. She stated she would continue to attempt to interview father about ICWA.

On October 8, 2020, the Department mailed notices to the Cherokee and Blackfeet tribes with "the information obtained so far."

In a Last Minute Information for the Court, filed on October 15, 2020, the Department reported that on October 8, 2020, it mailed ICWA notices to the "Bureau of Indian Affairs Federal Office Building, Secretary of the Interior, the Blackfeet Tribe of Montana, Cherokee Nation, Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee."

By the October 30, 2020, jurisdiction hearing, the only return receipt received was from the Bureau of Indian Affairs. After considering the evidence and the parties' arguments, the

juvenile court sustained the section 300 petition and continued the disposition hearing to November 16, 2020.

At the November 16, 2020, disposition hearing, the juvenile court removed the child from the parents' custody, ordered the Department to provide father with reunification services, and denied mother reunification services. It then set the matter for a progress hearing on January 15, 2021, and ordered the Department to file a progress report one week before the hearing that was to include the ICWA return receipts, responses from the tribes, and efforts to contact the outstanding tribes. Mother and father appealed from the jurisdictional findings and disposition order.

B.      *Tribal Responses to ICWA Notices*

On January 4, 2021, while the parents' appeal was pending, the Department filed an Interim Review Report regarding further correspondence with the Blackfeet and Cherokee tribes. The Blackfeet Tribe of Montana responded in writing that the tribe was not able to find the child on the tribal rolls, the tribe's blood quantum requirement for enrollment is "1/4 Blackfeet blood," and the child is not eligible for enrollment with the tribe. The Eastern Band of Cherokee Indians responded that it had reviewed the tribe's registry and the child was not a tribal member or eligible for membership based on the information provided by the Department.

In a Last Minute Information filed on February 19, 2021, the Department reported it had also received a written response from the United Keetoowah Band of Cherokee Indians, which indicated it had reviewed the tribe's registry, the tribe's blood

quantum requirement for enrollment is "1/4 . . . Keetoowah (Cherokee) blood," and the child was not a tribal member or eligible for membership in the tribe based on the information provided.

On April 19, 2021, the Department reported that a representative of the Cherokee Nation, which had previously indicated it was "extremely back logged" in processing ICWA notices, had told a social worker over the telephone that the tribe would likely provide a response within the next 30 days. A month later, the Cherokee Nation informed the Department in writing that the child "could POSSIBLY be connected to the Cherokee Nation" but an accurate determination could not be made without information about L.W. and M.U.'s relationships to the child, or their middle names and/or dates of birth.

C.    *Appeal and Limited Remand*

On appeal from the juvenile court's jurisdictional findings and disposition order, we concluded that while the court and the Department met their initial inquiry duties, the Department did not meet its duty of further inquiry under ICWA.

Specifically, we noted the Department failed to interview the following individuals concerning father's claimed Indian ancestry: father; paternal aunts G.U. and Kay; and paternal uncle M.U. We also concluded that the Department's interview of paternal aunt L.W. was incomplete. L.W. confirmed father's claim of possible Cherokee and Blackfeet heritage and provided biographical information for paternal grandmother and grandfather and paternal great-grandfather, but the Department

did not obtain or include those relatives' current or former addresses.

In an opinion filed July 20, 2021, we conditionally affirmed the juvenile court's jurisdiction and disposition orders and remanded the matter with directions to the juvenile court to order the Department to make further inquiry into Father's Cherokee and Blackfeet ancestry and, if necessary, to provide notice to any tribe. (*In re J.W.* (July 20, 2021, B309011) [nonpub. opn.], pp. 16–17.) Remittitur issued on September 23, 2021.

D.    *Further Inquiry After Remand*

On August 3, 2021, a social worker spoke to father again about his Native American ancestry. Father reported paternal great-grandparents were "Cherokee and Blackfoot." When the social worker asked for their identifying information, father said he would call back with that information. On April 10, 2021, the social worker asked father for the information again, but father refused to provide it, became hostile, and said, "'Why should I help you with your job?'" On September 23, 2021, father again said he had given the Department the information he knew and added that "relatives that know have passed away."

The Department also contacted paternal aunt L.W. again. L.W. said paternal great-grandfather Robert Underwood had "Cherokee heritage," although she did not know if he was a tribal member. L.W. also provided paternal grandmother's name, Leona W., and birth date and month, but she did not know the years of her birth or death. In a subsequent conversation, L.W. also provided the social worker with her full name and birth date and paternal uncle M.U.'s full name and telephone number. A

month later, L.W. gave a different last name for paternal great grandfather, "Moore," and said he had Cherokee ancestry and once lived on a reservation before "he left." L.W. did not have any other identifying information for paternal great-grandfather. She provided a last known address on Ezmirlian Street in Compton, California for paternal grandmother Leona W.

A social worker called paternal aunt G.U. on September 11, 13, and 22, 2021 and tried to leave messages, but her voicemail was full.

On September 1, 2021, a social worker spoke with paternal uncle M.U., who said the family had Indian ancestry but he did not know their tribal affiliation. He later said he knew about the Indian ancestry through paternal great-grandmother, Amanda Lee. M.U. did not know Amanda Lee's date of birth or paternal grandmother Leona W.'s date of death. He was able, however, to provide Leona W.'s date of birth.

On September 3, 2021, the Department informed the Cherokee Nation in writing of L.W. and M.U.'s birth dates. The Cherokee Nation's eligibility unit replied via e-mail L.W. and M.U. were not registered as tribal members and that the child was not an "Indian child" of the Cherokee Nation.

E. *Twelve-Month Review Hearing*

The juvenile court held a 12-month review hearing on October 28, 2021. Neither parent was present. The court found "the ICWA investigation and notice [were] complete" and that there was no reason to know the child was an "Indian child" as defined by ICWA. No party objected to the findings. The court

then terminated father's family reunification services and set the matter for a hearing pursuant to section 366.26.

Mother and father each filed notices of intent to file a writ petition. On March 21, 2022, father filed a petition for extraordinary writ, arguing the juvenile court erred when terminating reunification services and setting the matter for a 366.26 hearing because the Department did not fully comply with its ICWA-related further inquiry and notice duties by failing to "[s]hare [n]ew [r]elative [i]dentifying [i]nformation [w]ith the [t]ribes." Mother filed a joinder to the petition. We issued an order to show cause and now conditionally grant the petition.

## III. DISCUSSION

A.    *Legal Principles and Standard of Review*

Pursuant to ICWA, "'[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to[ ] an Indian child shall notify the parent or Indian custodian and the Indian child's tribe' of the pending proceedings and its right to intervene. (25 U.S.C. § 1912(a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8 . . . .) 'As the Supreme Court recently explained, notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the matter. ([*In re* ]*Isaiah W., supra*, 1 Cal.5th at pp. 8[–]9.)' [Citation.]" (*In re H.V.* (2022) 75 Cal.App.5th 433, 436–437.)

We review claims of inadequate inquiry into and notice of a child's Indian ancestry for substantial evidence. (*In re H.V., supra*, 75 Cal.App.5th at p. 438.)

B.    *Duty of Inquiry*

"The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under [s]ection 300, 601, or 602 may be or has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) "If there is reason to know . . . the child is an Indian child, the party seeking foster care placement shall provide notice" to the child's parents or guardians, and to the child's tribe, in accordance with section 224.3. (§ 224.2, subd. (f).)

Parents contend the Department did not satisfy its inquiry and/or notice duties because it did not include the following information in its October 2020 ICWA notices or share the information with the Cherokee Nation via e-mail: (1) paternal great-grandmother's name, Amanda Lee; (2) paternal grandmother's last known address on Ezmirlian Street in

10

Compton; and (3) information that paternal great-grandfather, who L.W. believed had Cherokee ancestry and lived on a reservation before "he left", had a different last name, Moore.

We previously concluded the Department's inquiry was inadequate because it did not interview (or adequately interview) father, paternal uncle M.U., and paternal aunts G.U., L.W., and Kay. The record reflects that the Department completed these interviews after the matter remanded to the juvenile court, and the parents do not contend otherwise. Rather, the parents argue that the Department also should have provided the tribes with newly obtained information regarding various paternal relatives' identities and last known address.

Under section 224.2, subdivision (e)(2)(C), the Department's further inquiry duties include "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(C).) "Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under" ICWA. (*Ibid.*) "Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Ibid.*)

In light of new information provided by L.W. that paternal great-grandfather once lived on a reservation, we agree that paternal great-grandfather's last name was information that should have been shared with the Cherokee Nation as part of the Department's further inquiry duties. Although the Cherokee Nation had responded the child is not an "Indian child" in

11

relation to the tribe, the response specifies that "[a]ny incorrect or omitted information could invalidate this determination." The October 2020 notice to the Cherokee Nation included paternal grandfather's name, but the last name used was "Underwood" and not "Moore." In addition, while the Department informed the Cherokee Nation by letter on September 3, 2021, of paternal aunt L.W. and paternal uncle M.U.'s respective dates of birth, it failed to include paternal great-grandmother's name, paternal grandmother's last known address, or information that paternal great grandfather may have had a different last name, Moore. (See *In re S.R.* (2021) 64 Cal.App.5th 303, 317 [grandparents' statement that great-grandmother was member of the Yaqui tribe of Arizona was "very specific evidence of Indian ancestry," triggering duty to further investigate children's potential Indian ancestry prior to termination of parental rights].)

Because the Department did not provide reasonably available and relevant information to the Cherokee Nation when it solicited the tribe's assistance in determining whether there is reason to know the child is an Indian child, we conclude the Department's further inquiry efforts were inadequate and prejudicial.[3] (See *In re H.V., supra*, 75 Cal.App.5th at p. 438.)

C. *Duty of Notice*

The Department also has an obligation to provide sufficient notice to Indian tribes, which duty is triggered when the

[3] Parents do not contend additional relative information should have been shared with any tribe other than the Cherokee Nation as part of the Department's further inquiry efforts.

12

Department has a "reason to know" a child is an Indian child. (§ 224.3, subdivision (a)(3).)  There is "reason to know" a child is an Indian child when any of the following is true:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;]  [¶]  (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;]  [¶]  (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;]  [¶]  (4) The child who is the subject of the proceeding gives the court reason to know [he or she] is an Indian child[;]  [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or]  [¶]  (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d).)

The record does not establish any of the listed circumstances for having a "reason to know" the child is an Indian child, and the parents have not argued otherwise.  The Department therefore had no duty to provide formal notice in accordance with section 224.3, much less any duty to provide amended notice.  Accordingly, we reject the parents' suggestion that the Department improperly discharged any notice requirements.

## IV.   DISPOSITION

The petition for extraordinary writ is conditionally granted. The matter is remanded with directions to the juvenile court to order the Department to comply with ICWA as follows:

1.      The Department shall conduct further inquiry concerning father's Cherokee ancestry by providing additional information to the Cherokee Nation, including (1) paternal great-grandmother's name, Amanda Lee; (2) paternal grandmother's last known address on Ezmirlian Street in Compton, California; and (3) paternal great-grandfather's last name, "Moore."

2.      If from that further inquiry the Department has a reason to know the child is an Indian child, then it shall comply with the formal notice requirements in section 224.3.

3.      The Department shall document its investigation, including contact with tribes, if any, and any information obtained from the tribes, and provide that documentation to the juvenile court.

4.      The juvenile court shall conduct a noticed hearing to review the adequacy of the Department's investigation.  If the court determines the Department's investigation was adequate and there is no reason to know the child is an Indian child as that term is defined under ICWA, then the order setting a hearing pursuant to section 366.26 shall be reinstated.

14

5.     If the court determines the Department's investigation was adequate and there is a reason to know the child is an Indian child as that term is defined under ICWA, then the Department shall provide adequate ICWA notice to the tribe or tribes, mother, father, and the regional Bureau of Indian Affairs and shall proceed thereafter in compliance with ICWA and related California statutes and court rules.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.

15