Filed 12/5/22  In re J.B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.B.,<br><br>    Defendant and Appellant. | E079399<br><br>(Super.Ct.No. RIJ2100454)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Harry A. Staley, Judge. (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Conditionally reversed with directions.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel for Plaintiff and Respondent.

1

To further the Indian Child Welfare Act's (ICWA)[1] purpose of protecting the best interests of Indian children in custody proceedings, the Welfare and Institutions Code requires child protection agencies to ask "extended family members [and] others who have an interest in the child" whether the child is or may be an Indian child. (§ 224.2, subd. (b).)[2] This duty is commonly called the initial inquiry and it applies throughout the dependency proceeding. (*In re T.G.* (2020) 58 Cal.App.5th 275, 290.)

In this appeal, D.B. (father) challenges the order terminating his parental rights over his infant daughter, Jayden B. His only argument is that the Riverside County Department of Public Social Services (DPSS) failed to ask numerous available family members about Jayden's Indian ancestry in violation of section 224.2, subdivision (b). We agree DPSS failed to discharge its statutory duty, and as a result, the juvenile court erred by finding ICWA did not apply. We therefore conditionally reverse the ICWA finding and order terminating father's parental rights and remand for DPSS to complete their initial inquiry.

## I

## FACTS

In September 2021, the juvenile court took dependency jurisdiction over one-month-old Jayden under section 300, subdivision (b) (failure to protect) due to both parents' unresolved substance abuse issues. Because the single issue before us is the

---

[1] 25 U.S.C. § 1901 et seq.

[2] Unlabeled statutory citations refer to the Welfare and Institutions Code.

adequacy of DPSS's ICWA inquiry, we confine our summary to the facts relevant to ICWA.

When DPSS filed Jayden's dependency petition, they also submitted an ICWA-010 form reflecting that mother had denied knowing about any Indian ancestry. Additionally, the social worker noted in the detention report that she had interviewed various family members about the parents' drug use and father's whereabouts, including the maternal great-grandmother, paternal grandfather, paternal great-aunt, and paternal grandmother.

At the detention hearing on August 10, 2021, the paternal grandmother and paternal aunt accompanied the parents in court. After receiving the parents' ICWA-020 forms, both of which denied Indian ancestry, the court found ICWA did not apply without asking the paternal relatives in the courtroom about their knowledge of Indian ancestry.

In advance of the jurisdiction and disposition hearing, DPSS considered several relatives for Jayden's placement. Of those relatives, two had responded: the maternal great-aunt was interested in placement and the paternal grandmother said she was unable to care for an infant.

Leading up to the six-month review hearing, DPSS informed the court that the parents were living with the paternal grandfather and that the paternal grandmother and paternal aunt were taking them to visits. On June 7, 2022, after the parents' reunification

efforts failed, DPSS placed Jayden with the maternal great-aunt, who lived with her mother and lived close to her brother and sister.

At the permanency planning hearing on July 13, 2022, Riverside County Superior Court Judge Harry A. Staley found ICWA did not apply, terminated both parents' parental rights, and selected adoption as Jayden's permanent plan.

## II

## ANALYSIS

Father argues the orders terminating parental rights and the ICWA finding cannot stand because DPSS failed to ask his extended family members about potential Indian ancestry, as required by section 224.2, subdivision (b). We agree.

ICWA establishes minimum federal standards a state court must follow before removing Indian children from their families. (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 287.) California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes. (See §§ 224-224.6.) An Indian child is any unmarried person under 18 who is either "a member of an Indian tribe or eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (b).)

When there is "reason to know" the child is an Indian child, ICWA requires the child protective agency to provide notice of the dependency proceedings to the relevant Indian tribe or tribes. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a).) The notice is intended is to enable the tribes "to determine whether the child involved in a

4

dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 288.) Because ICWA defines "Indian child" in terms of tribal membership—not race or ancestry—"the question of membership is determined by the tribes." (*In re T.G.*, at pp. 275, 294; see also *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 65-66, fn. 21 [the Indian tribe is final arbiter of its membership rights].) Notice to the tribes is therefore "central to effectuating ICWA's purpose" because it enables the tribe "to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G.*, at pp. 275, 288.)

However, "[b]ecause it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741 (*Benjamin M.*).) Commonly referred to as the duty of inquiry, these inquiries are a precursor to the notice requirement, designed to enable the agency and the juvenile court to determine whether notice to the tribes is necessary. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883-884.) There are two types of inquiry: initial and further. (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.) Our case involves the duty of initial inquiry only.

Federal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a).) California law requires the court to make the same inquiry of each participant at their "first [court]

5

appearance." (Welf. & Inst. Code, § 224.2, subd. (c).) California law also requires the agency, when taking a child into temporary custody, to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child. (Welf. & Inst. Code, § 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, siblings-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)

To ensure tribes receive notice when required, the duty of initial inquiry applies to both the agency and the juvenile court on an "affirmative and continuing" basis. (§ 224.2, subd. (a).) It "begins with initial contact" and applies through termination of parental rights "and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.)

As we held in *Benjamin M.*, a failure to discharge the duty of initial inquiry is prejudicial, and we will therefore conditionally reverse, if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Notably, this standard does not require "proof of an actual outcome (that the parent may actually have Indian heritage)"; rather, the missing information need only be relevant to the ICWA inquiry, "whatever the outcome will be." (*Benjamin M.*, at pp. 743-744.)

6

In this case, DPSS failed to discharge the duty of initial inquiry because they asked only the parents about Indian ancestry, despite being in contact with at least five family members (i.e., the maternal great-grandmother, paternal grandfather, paternal great-aunt, paternal aunt, and paternal grandmother). The record also indicates DPSS might be able to contact with relative ease the three relatives the maternal great-grandmother's mother is in close contact with (i.e., the maternal aunt, uncle and great-great-grandmother).

Because DPSS asked only the parents about Indian ancestry, the juvenile court's finding that ICWA did not apply is not supported by the record. (*In re J.C.* (2022) 77 Cal.App.5th 70, 79-80.) "[T]he court had a duty either to require [DPSS] to provide a report with complete and accurate information regarding the results of [their] inquiry . . . or to have the individual responsible for notice to testify in court regarding the inquiry made . . . . Only then could the court determine whether [ICWA] applied." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.) We conclude the error is prejudicial. The family members and interested relatives were readily available and their responses would "shed meaningful light on whether there is reason to believe" Jayden is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

In an attempt to avoid remand, DPSS claim father waived his ICWA challenge because his argument is premised on section 224.2, which is a state statute. But, as our Supreme Court has explained, ICWA *and the California laws implementing* it protect interests of the Indian tribes "that are separate and distinct" from those of the parents. (*In*

7

*re Isaiah W.* (2016) 1 Cal.5th 1, 13 (*Isaiah W.*).) Following this reasoning, our court has previously held that "the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal." (*In re K.R.* (2018) 20 Cal.App.5th 701, 706.)

Next, despite clear statutory language to the contrary, DPSS argue no further inquiry is necessary when both parents deny having Indian ancestry, as the parents did here. Most courts who have considered this argument, including ours, disagree. (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 [rejecting the position]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 [same]; *In re J.C.*, *supra*, 77 Cal.App.5th at pp. 70, 78-80 [same]; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [same]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [same].) Section 224.2, subdivision (b), imposes an "express obligation . . . to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*In re Antonio R.*, at p. 431.) "[T]he point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child [is] *to obtain information the parent may not have*." (*In re Y.W.*, at p. 556, italics added.)

The right at stake here, the right to a determination of a child's Indian ancestry, belongs in large part to the tribes, who are not present and "have no idea their rights are on the line." (*In re M.M.* (2022) 81 Cal.App.5th 61, 72, dis. opn. of Wiley, J.) Moreover, the Legislature charged the agencies, not the parents, with the duty of "obtaining

information to make that right meaningful." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.)

The goal of providing children with permanent and stable homes does not override the importance of properly determining a child's Indian status and protecting the integrity and stability of Indian tribes. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 12.) For that reason, our Supreme Court has urged that ICWA compliance should be "swift and early." (*Isaiah W.*, at p. 12.) When it is not, and when there is clear error (like here), "[t]he most expeditious and efficient way to solve th[e] problem is for the parties to stipulate to a limited reversal and an expedited remittitur." (*In re K.M.* (2015) 242 Cal.App.4th 450, 458.) At the very least, we would hope the agency would not continue to press arguments our court has already rejected.

## III

## DISPOSITION

We vacate the July 13, 2022 ICWA finding and conditionally reverse the order terminating parental rights. On remand, the juvenile court shall order DPSS to comply with the duty of initial inquiry (Welf. & Inst. Code, § 224.2, subd. (b)) and, if applicable, the duty of further inquiry (*Id*., subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3). If the court determines ICWA does not apply, the order terminating parental rights shall be reinstated. If the court

determines ICWA does apply, the court shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.