Filed 5/1/25  In re R.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.B. et al., Persons Coming Under the Juvenile Court Law. | H052116 (Santa Clara County Super. Ct. Nos. 23JD027682, 23JD027683) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. R.B., Defendant and Appellant. | |

Father R.B. appeals from the juvenile court's jurisdictional findings and dispositional order adjudging his two children dependents of the court and placing them with their mother subject to a family maintenance plan.  Father's sole contention on appeal is that the juvenile court and Department of Family and Children's Services failed to discharge their duties under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related state law (Welf. & Inst. Code, § 224.2, subd. (a)),[1] and he asks this court to conditionally reverse the order and remand for compliance with ICWA and section 224.2.  But the court made no ICWA findings inconsistent with a continuing

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

"reason to believe" the children were Indian children pending the department's ongoing inquiry.  (See § 224.2, subd. (e).)  Nor did the court's placement of the children with their mother undermine ICWA's objectives of "prevent[ing] [the children's] involuntary out-of-home placement" and ensuring that an out-of-home placement would "reflect[] the unique values of the child[ren]'s tribal culture . . . ."  (§ 224, subd. (a)(2).)  We will accordingly affirm the March 6, 2024 jurisdictional findings and dispositional order.

## I.    BACKGROUND

### A.    *Initiation of Dependency Proceedings*

The department filed juvenile dependency petitions as to then two-year-old Re.B. and 11-month-old Ry.B. under section 300, subdivision (b)(1), alleging substance abuse by both parents and domestic violence by father against mother in the minors' presence. The children were not detained and remained with mother pending the jurisdiction and disposition hearing, consistent with the department's placement recommendation.

### B.    *Initial ICWA Inquiry*

During her initial interview with the social worker, mother reported she had Blackfoot and Cherokee ancestry but that her family was not registered with a tribe. Father reported Indian ancestry but stated he did not know the tribe.  Based on the parents' answers, the department indicated in its petition that its initial ICWA inquiry supplied "reason to believe" that the children are or may be Indian children.[2]

Mother and maternal grandmother were present at the detention hearing.  Mother reiterated she had Blackfoot and Cherokee ancestry but that her family was not registered with a tribe.  Maternal grandmother said she was unsure whether any of her

---

[2] "The language of both federal and state law uses the term 'Indian.'  California courts have used alternative terms, such as 'American Indian' or 'Native American.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).)  We follow the California Supreme Court in using the term "Indian" to reflect the statutory language but keep the terminology used by the parties and by various courts in quotations.  No disrespect is intended.

2

family members were registered with a tribe or lived on a reservation but had been "looking for that information for a very long time" and would continue to "research behind it." Father was not present at the detention hearing but appeared through counsel, who reported that father had "Blackfeet or Blackfoot" ancestry. The court accordingly found "reason to believe that [each] child is an Indian child" (some capitalization omitted) and ordered the department to conduct further inquiry.

## C.        *Further Inquiry and Combined Jurisdiction/Disposition Hearing*

After the detention hearing, mother gave the department additional "relative information she received from the maternal grandmother"—namely, a family tree that is not included as part of the record on appeal.[3] Father, however, "declined to meet with the [social] worker to conduct further inquiry." The department asked mother for father's relative information so that it could further inquire about Indian heritage on the paternal side of the family. Although mother said she might be able to gather this information, she ultimately did not produce any. The department also asked mother's best friend—the children's godmother—about the children's Indian heritage but learned no further information.

Before the jurisdiction and disposition hearing, the assigned social worker sent informal ICWA notices to four Blackfoot and Cherokee tribes, the Bureau of Indian Affairs (BIA), and the State Department of Social Services.[4] The notices included the full names and birthdates of the children and parents and the family tree mother had provided. Two tribes responded. The first reported that neither the children nor the

[3] The department also did not include the family tree as a part of its jurisdiction and disposition report to the juvenile court.

[4] We refer to these notices as "informal notices" because they took place at the "reason to believe" stage of the inquiry. (See § 224.2, subd. (e).) The requirement to send informal notices is "distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1133.)

3

parents were enrolled members of the tribe and declined involvement. The second tribe requested the middle name and date of birth for paternal grandfather, which the social worker provided.[5]

Less than two weeks before the disposition hearing, a social worker met with father, who was then in custody. During that interview, father "opened up" about his struggles with depression and alcohol abuse and expressed a desire to "do better and be able to see his children." In this interview, however, the social worker does not appear to have asked father about his ancestry. The department stated in its jurisdiction and disposition report that ICWA "does or may apply."

Father, still in custody, made his first appearance on the first day of the jurisdiction and disposition hearing. During his testimony, the department inquired into father's Indian ancestry. Father testified he had Cherokee and Blackfoot ancestry through his mother's side and that his mother "know[s] the most about [that] Native American ancestry." Asked whether family members were enrolled in a Cherokee or Blackfoot tribe, father responded that he was unsure and had been "trying to figure it out" before he was jailed. Asked if he could provide contact information "after the . . . hearing today" for his parents, relatives, and "any other family members who would have information" about his ancestry, father replied he had no contact information "right now." That same day, father completed an ICWA-020 form indicating he may have Blackfoot and Cherokee ancestry but disclosed no further information about his relatives or their contact information.

On March 6, 2024, the second and final day of the disposition hearing, father refused transport and did not appear. At the conclusion of the hearing, the court adjudged the children dependents of the court and ordered that they remain with mother

_____

[5] The record does not disclose how the department obtained the paternal grandfather's information. As father notes on appeal, however, the department was aware that father had a child welfare history as a minor.

4

and detained from father, consistent with the department's recommendations, and set a date for review of the family maintenance plan. The court made no ICWA findings: Although it did not modify either the prior finding of reason to believe the children were subject to ICWA or the prior order for further inquiry, it gave no direction to the department.[6]

Father timely appealed.

## II.    DISCUSSION

On appeal, father's sole claim of error is that the department and juvenile court failed to meet their duty of inquiry under ICWA and section 224.2 because the department made "no effort to interview or document attempts to interview any paternal extended family members or maternal relatives beyond maternal grandmother." Father invites us to conditionally reverse the jurisdictional findings and dispositional order on this ground. Because the department's inquiry was still ongoing when the court issued the order appealed from, and because that order does not imply that there was no reason to believe the children were subject to ICWA, we will affirm.

### A.    *ICWA/Cal-ICWA Overview*

ICWA's purpose is to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) It serves this purpose by setting minimum federal standards state courts must follow in child custody proceedings involving Indian children. (*In re Delila D.* (2023) 93 Cal.App.5th 953, 964.) "Involuntary state court proceedings to place an Indian child in foster care or terminate parental rights 'are subject to especially stringent safeguards.' " (*Ibid.*) "Because ICWA applies to child custody proceedings involving an 'Indian child,' procedural rules for determining whether a child" is an Indian child "are crucial to the statute's application." (*In re Delila D.*, at p. 965.)

---

[6] The juvenile court judge presiding at the disposition hearing was not the judge who ordered the further ICWA inquiry at the detention hearing.

5

Under section 224.2, subdivision (a), the juvenile court and department "have an affirmative and continuing duty to inquire" whether a child subject to a dependency petition "is or may be an Indian child." The duty for the department "begins . . . when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The court's duty "begins at the first hearing on the petition" and requires the court to ask "each party to the proceeding and all other interested persons present . . . whether they know or have reason to know that the child is an Indian child." (§ 224.2, subd. (c).) This duty, sometimes referred to as the duty of initial inquiry, "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).)

If the court or social worker "has reason to believe" that the proceeding involves an Indian child, they must make "further inquiry," and do so "as soon as practicable." (§ 224.2, subd. (e).)[7] The required further inquiry includes "(1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs [BIA] and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1132–1133.) "The department 'does not discharge their duty of further inquiry until they make a "meaningful effort" to locate and interview extended family members and to contact [the BIA] and the tribes.' " (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1153.) The department must also "include in its reports a discussion of what efforts it undertook to locate and interview family members who might have pertinent information." (*H.A. v. Superior Court* (2024) 101 Cal.App.5th

---

[7] There is reason to believe a child is an Indian child when there exists "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).)

956, 966; see also *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198 [noting that while the department "may have performed its duty of inquiry, it failed in its duty to document it and to provide clear information to the court so the court could rule on the question of whether the ICWA applied"].)

If the court or department has "reason to know . . . that an Indian child is involved," it must give notice to not only the child's parents or legal guardian but also the child's tribe of "hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement." (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).) "Notice to [an] Indian [child's] tribe[] is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1133.) "In addition, once there is reason to know a child is an Indian child, the juvenile court must find ICWA applies and 'treat the minor as an Indian child unless and until it determines that ICWA does not apply.' " (*Ibid.*)

## B.  *The ICWA Requirements*

At the outset, we reject the department's implication that ICWA's inquiry requirements are immaterial unless and until the department seeks to remove the children from a parent. This interpretation strays from the plain language of section 224.1, subdivision (d), which provides that ICWA's notice and inquiry requirements apply to all custody proceedings "that *may* culminate" in foster care placement, termination of parental rights, preadoptive placement, or adoptive placement of an Indian child. (§ 224.1, subd. (d)(1), italics added.)

While the department in this case recommended through the disposition hearing that the children remain with mother, it does not and cannot argue that the mere fact of its initial recommendation would prevent these proceedings from ever culminating in the children's involuntary out-of-home placement. (§ 224, subd. (a)(2).) And while the

7

juvenile court in issuing the dispositional order made no express ICWA findings, an adequate inquiry remains essential to determining whether ICWA's substantive protections for Indian children and their tribes will apply.

The department's reliance on *In re J.B.* (2009) 178 Cal.App.4th 751 is inapt. The court there held that section 361's heightened evidentiary standard for removing an Indian child from a parent or Indian guardian does not apply when the child "is removed from one parent and placed with the other." (*Id.* at p. 757.)[8] We do not read *In re J.B.* as excusing the department's threshold duty of inquiry in determining whether there is "reason to believe" or "reason to know" that a child is an Indian child.

## C. *Conditional Reversal Is Not Required*

On the merits, father contends that the juvenile court's order must be conditionally reversed because the department and court conducted an inadequate inquiry into the children's Indian heritage. We assume that the inquiry as of the jurisdiction/disposition hearing was inadequate to support a finding of no reason to believe that Re.B. and Ry.B. were Indian children. But because neither the order nor the record permits us to infer that the court made such a finding, father's challenge to the adequacy of the inquiry is premature.

### 1. *The Extent of the Department's Inquiry*

Directed at the detention hearing to conduct further inquiry, the department endeavored to comply, even if its efforts were incomplete and inconclusive by the jurisdiction/disposition hearing.

On the maternal side of the family, the department spoke with mother and maternal grandmother and obtained from them a family tree later included in the

---

[8] Section 361, subdivision (c)(6) provides that in "an Indian child custody proceeding," the juvenile court must find by clear and convincing evidence that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child, and that finding [must be] supported by testimony of a 'qualified expert witness.' "

department's informal ICWA notices to the various Blackfoot and Cherokee tribes and the BIA. The department supplemented the initial notice with additional information when one of the tribes requested that information. The department also sought information regarding Re.B. and Ry.B.'s Indian ancestry from the children's godmother.

On the paternal side, the department's inquiry of father before he was jailed was initially stymied by his refusal to cooperate. And although it could have inquired when father "opened up" in custody as the jurisdiction and disposition hearing approached, nothing in the record suggests that inquiry would have been any more productive than the further inquiry it undertook on the record at the disposition hearing, father's first personal appearance in the proceedings. Although father replied that he was then unable to provide contact information for family members who might have information about his ancestry, he agreed that he could do so later. We have no basis on this record to infer that the department would then fail to act on any additional information father thereafter could provide. (See *In re C.Y.* (2012) 208 Cal.App.4th 34, 41 ["[department] must inquire as to possible Indian ancestry and act on any information it receives"].)

### 2. *No ICWA Finding*

Father takes issue with the diligence and thoroughness of the ICWA inquiry, but on this record, his arguments are premature. "ICWA issues are not ripe for review" when "the dependency case is still ongoing" and the juvenile court "made no final ICWA ruling." (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461; see also *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [declining as premature father's "invitation to assess the adequacy of an ICWA noticing process that is . . . still ongoing"].)

Assuming that the department's ICWA inquiry was not yet sufficient, nothing in the record suggests the court in issuing its dispositional order either considered the department's inquiry to be at an end or improvidently found that there was no longer reason to believe the children were subject to ICWA's strictures. The department's statement in its disposition hearing report that ICWA "does or may apply" conveyed that

9

it did not consider its inquiry thus far to be complete; at the disposition hearing, county counsel specifically asked father about his ancestry and asked him to supply contact information for his relatives. At no point before the court issued the operative jurisdictional findings and dispositional order did the department revise its position that Re.B. and Ry.B. may be Indian children, nor did the court at any point in the hearing or in its order revise the prior finding of "reason to believe" the children were Indian children.

To be sure, given father's testimony and the juvenile court's independent duty to comply with ICWA and section 224.2, the court could at a minimum have reiterated on the record that there remained "reason to believe" the children are Indian children and directed the department's further inquiry. And the failure to do so was not in keeping with the court's duty to supervise the inquiry. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 555 [juvenile court has duty to ensure that child protective agency adequately investigates a child's possible Indian ancestry]; *In re K.R.* (2018) 20 Cal.App.5th 701, 709 [holding that "once there is sufficient information to believe that the children might be Indian children . . . 'responsibility for compliance' with [ICWA and section 224.2] 'falls squarely and affirmatively' on *both* the social services agency and the court"].)

The juvenile court's failure to direct further inquiry, however, does not warrant reversal because the only finding that can be inferred from the dispositional order is that there remained "reason to believe" the children are Indian children. Certainly, nothing permits us to infer the opposite. " 'Where . . . the juvenile court finds ICWA does not apply to a child, "[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." ' " (See *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) Here, Father's testimony neither dispelled the court's prior "reason to believe" finding nor provided the court or department with any basis to believe that their duty of inquiry under ICWA was at an end.

We do not suggest that a juvenile court may thwart ICWA's purpose by omitting proper findings. But because the only finding that can properly be inferred from the record of the disposition hearing is that there remained "reason to believe" that Re.B. and Ry.B. are Indian children and a corresponding duty of further inquiry, we discern no basis to conditionally reverse the court's dispositional order on ICWA grounds. (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101 [without a finding that ICWA does not apply, "[the court's] obligation would have been to order further inquiry"].) [9]

## III.   DISPOSITION

The juvenile court's March 6, 2024 jurisdictional findings and dispositional order are affirmed.

---

[9] Arguing otherwise, father relies on the department's later petition to amend the dispositional order and the juvenile court's ensuing order detaining the children from both parents and ordering their out-of-home placement, both of which are silent as to ICWA. We also note that the department in its "initial hearing report" on the subsequent petition asserts without explanation that there is "no reason to believe" the children are Indian children. But all of these postdate the March 6, 2024 disposition order and are beyond the scope of this appeal.

_____
LIE, J.

WE CONCUR:


_____
DANNER, Acting P. J.



_____
BROMBERG, J.



*DFCS v. R.B.*
H052116